## BARRINGER v. JEFFERSON STANDARD LIFE INS. CO.

### No. 3187.

District Court, E. D. South Carolina.

Jan. 19, 1935.

J. D. Gilland, of Florence, S. C., for plaintiff.

Willcox, Hardee & Wallace, of Florence, S. C., for defendant.

MYERS, District Judge.

This action was commenced by service of summons and complaint on October 26, 1934, and was tried before me without a jury at the regular term of the court at Florence on December 14, 1934. On hearing, the following facts were developed:

On March 24, 1928, L. E. Waters, being then the owner, mortgaged a lot of land in the city of Florence, S. C., to Jefferson Standard Life Insurance Company as security for an indebtedness of $18,000, which, according to the terms of the note and mortgage, was payable $540 on September 24, 1928, $540 on March 24, 1929, and $540 on the 24th day of September and March of each year thereafter until March 24, 1938, with interest at 7 per cent. per annum from date, payable semiannually.

On March 26, 1932, the principal had been reduced to $14,490, and there were items in arrears as follows: Balance of semiannual curtailment, due September 24, 1931, $270; semiannual curtailment due March 24, 1932, $540; semiannual interest due March 24, 1932, $508.90. Taxes were considerably in arrears. The papers on that date were forwarded to attorneys at Florence for foreclosure of the mortgage.

On March 28, 1932, L. E. Waters made a deed of the mortgaged property to J. L. Barringer, who held a mortgage on the premises, the lien of which had been subrogated to the lien of the mortgage to Jefferson Standard Life Insurance Company. Mr. Barringer, on March 28, 1932, directed a communication to the company to the effect that he expected Mr. Waters to make a deed to him for the property, and as soon as he did so he would catch up all payments. After certain negotiations between the local counsel of the company and Mr. Barringer, looking to a reinstatement of the mortgage, an arrangement was completed about April 29, 1932, whereby Mr. Barringer paid $1,318.99, representing the amount in arrears on the mortgage, and executed an instrument in writing under which he assumed the payment of the mortgage indebtedness, and specifically agreed to pay said indebtedness, together with all interest upon the same, and to comply with all of the original requirements in connection with the loan just as if said indebtedness had been originally contracted by him.

Under the agreement between the parties thus reached the loan was reinstated. There remained due the principal sum of $13,680, which was then payable (according to the terms of the mortgage) as follows: $540 on September 24, 1932; $540 on March 24, 1933; and $540 on the 24th day of September and March thereafter until March 24, 1938, when the balance of the principal became due, with interest at 7 per cent. per annum, payable semiannually. The installments which became due in September, 1932, and March, 1933, were duly paid by plaintiff.

In the fall of 1933, when the loan had approximately four and one-half years more

to run, Mr. Barringer expressed the desire to retire the balance of the indebtedness, and so wrote the company (letter September 11, 1933). On September 13, the company wrote to Mr. Barringer calling attention to the fact that the loan was not due until March 24, 1938; that it preferred to have the original contract carried out; but that if it would be an accommodation to Mr. Barringer the company would accept, in full settlement, in addition to the principal sum and accrued interest to date, 3 per cent. of the principal remaining due and unpaid, aggregating in all $13,402.80.

By letter, dated September 14, Mr. Barringer expressed dissatisfaction with payment of 3 per cent., and by letters dated September 16 and 19 the company advised that it was expensive to reinvest its funds; that it had a good loan and preferred to have the original contract carried out, but would accept in full settlement the balance of the principal and accrued interest, plus 2 per cent., the last-mentioned item aggregating $241.20. At that time the interest on the obligation to maturity, according to the terms of the instrument, was $3,118.50.

On September 22, Mr. Barringer voluntarily remitted the sum of $13,282.20, which represented principal $12,600, interest to September 24, 1933, $441, and $241.20 charged by the company for surrendering its privilege of having its funds invested, and of collecting interest thereon for the term provided by the contract.

The complaint alleges usury, and seeks to recover, under the South Carolina statutes, double the amount of interest paid both by Waters and Barringer from the inception of the loan contract, including the $241.20 paid by plaintiff in closing the transaction before maturity, over and above the principal and interest then due; this amount of $241.20 being the alleged usurious exaction upon which the action is based.

Section 6738, Code of South Carolina 1932, provides: "No greater interest than seven (7) per cent. per annum shall be charged, taken, agreed upon or allowed upon any contract arising in this State for the hiring, lending or use of money or other commodity, either by way of straight interest, discount or otherwise, except upon written contracts wherein, by express agreement, a rate of interest not exceeding eight per cent. may be charged."

Section 6740 provides: "Any person or corporation who shall receive, or contract to receive, as interest any greater amount than is provided for in the preceding section shall forfeit all interest, and the costs of the action and such portion of the original debt as shall be due shall be recovered without interest or costs, and where any amount so charged or contracted for has been actually received by such person or corporation, he or she, or they shall also forfeit double the total amount received in respect of interest, to be collected by a separate action or allowed as a counterclaim in any action brought to recover the principal sum."

Plaintiff's asserted right to recover interest paid by Waters as well as the interest paid by himself needs not to be passed upon, under my conclusions hereinafter stated. I am inclined to the view, however, that his assumption was of the contract then unperformed, by a reinstatement as of that date. Waters had defaulted in his contract with the defendant company, and it was reopened at the instance of the plaintiff Barringer, for the protection of his equity, on his agreement to pay the balance then due on the same terms as were originally extended to Waters. I am of the opinion that the application of the statute to recovery of double the amount of interest paid under the usurious contract or exaction is personal and does not survive. Garris v. Thomas, 66 S. C. 57, 44 S. E. 374.

I was not impressed upon trial that the defendant's agreement to terminate the contract before maturity, upon payment by the plaintiff of the principal and interest then due and the further payment of 2 per cent. of the principal, was a violation of the usury statutes; but I have given to this matter extended and very careful consideration, because of the righteous insistence of plaintiff's counsel on the justice of the claim.

The only case I have been able to find where an action of a similar nature was considered by the Supreme Court of South Carolina is that of Cooke v. Young, Adm'r, 89 S. C. 173, 71 S. E. 837, which seems directly in point. In that case, the debtor desired to pay two notes, providing for the maximum legal rate of interest, before maturity. The holder of the notes agreed to surrender them upon payment of the full amount of principal with interest to the maturity date, and the transaction was so closed. The court held that where a debtor, for his own convenience, voluntarily chooses, before maturity, to pay the amount of the principal with interest to maturity, according to the terms of the instrument, it is, although tendered and accepted in ad-

vance of the time fixed, nothing more than the performance of the lawful contract, and cannot operate to taint the transaction with usury.

And in 27 Ruling Case Law, p. 235, it is said: "It is generally agreed that the acceptance of payment of debt before maturity, with interest to date of maturity does not constitute usury."

To the same effect is the case of Smithwick v. Whitley, 152 N. C. 366, 67 S. E. 914, 28 L. R. A. (N. S.) 113, 20 Ann. Cas. 1348. See, also, note 28 L. R. A. (N. S.) 113; 66 C. J. §§ 117 (b) and 118; Cissna Loan Co. v. Gawley, 87 Wash. 438, 151 P. 792, L. R. A. 1916B, 807, Ann. Cas. 1917D, 722 and notes.

■ Where, as in the instant case, the holder of an unmatured obligation agreed to surrender the evidence of debt upon payment of an amount less than the interest due to the maturity date, the same principle would apply. The generally accepted definition of "usury" is "the taking of more for the use of money than is allowed by law." In this case there was no exaction, and the amount paid, alleged as usury, was paid for the surrender by the defendant of the loan so invested for an extended period of time, as an accommodation to the plaintiff. The plaintiff did not have the right to demand acceptance of the indebtedness except according to the reasonable terms of the contract; by semiannual installments, with legal interest, to the maturity of the indebtedness in 1938, upon which defendant had the right to insist, even to the extent, under Cooke v. Young, supra, of their accepting the $3,000 and more of unmatured interest without violation of the usury statutes as there construed.

The facts in the case of Kilpatrick v. Germania Life Ins. Co., 183 N. Y. 163, 75 N. E. 1124, 2 L. R. A. (N. S.) 574, 111 Am. St. Rep. 722, chiefly relied upon by the plaintiff to sustain his contentions in this case, are very different from the facts of this case. There the defendant elected to declare the indebtedness due and payable, and instituted an action to foreclose the mortgage. The mortgagor arranged for a new loan and notified the mortgagee's attorney of his readiness to pay the amount due. Without the mortgagor's consent the mortgagee undertook to discontinue the action, and refused to accept payment of the amount due unless the mortgagor paid the additional sum of $1,000, which amount the contract stipulated was to have been paid by the mortgagor as an anticipation fee in the event that he desired to pay the debt before maturity. This exaction was met by the mortgagor, who thereafter brought suit under the usury statute of the state of New York, and was held entitled to recover.

■ As has been said, in this case the mortgage was reinstated at the instance of the plaintiff to permit the preservation of his equity by taking advantage of the loan extension, and his contract with the defendant was to pay the note and mortgage according to its original terms.

I am therefore of the opinion that the transaction between plaintiff and defendant was a legal one, and that defendant did not contract for, charge, or receive a greater rate of interest than it was legally entitled to receive under the laws of this state.

It is therefore ordered that judgment be entered in favor of the defendant, and that this action be dismissed, at the cost of the plaintiff.